Good morning. We have two cases today. The first case is Brotherhood of Locomotive Engineers and Trainmen. The Union Railroad et al. Numbers 09-3773 and 3774. Mr. Berlin and Mr. Brodar. May it please the court. I'm Jeffrey Berlin. I'm counsel for Union Railroad. We're dividing our appellant in the other one of the two cases. One of you is going to deal with jurisdiction, right? I'd be happy to. May I first ask the court, I'd like if possible the court's permission to reserve five minutes for rebuttal. So you only want five minutes? Somebody should rebut I think. Let me ask just a dumb question. Do you have a dog in the fight, Mr. Brodar, at this point? I mean, I know what you'd like to win, who you'd like to see win. I'm not arguing with you, but your question was answered by all five, was it not? All four. The question with regard to whether UTU was properly assigned to work was never before the neutral lynch. That was even arbitrator Malin agreed that that issue was decided by 1140, the board 1141. Right. And it really never got to here. I'm just here to make sure that that was. So as to whether, I mean, as to whether we have jurisdiction of this matter or whether it's interlocutory and then on the merits, what will you be talking about? Because they don't seem to apply to you. The only question I have with regard to the merits is that the court seemed to have gone further than it really should have. The standard is very well set and although maybe we don't necessarily have a direct interest here, I don't want this to creep into other decisions where we. Understood. But who's going to, who's going to argue the merits then, Mr. Berlin? I'm prepared to argue the merits and jurisdiction, Your Honor. Okay. Is there really any need for you to argue, Mr. Brodar? I'm just asking. I mean, you're in a cat bird seat. You're in a good shape. So, I mean, it's a pleasant problem for you here. But the, the questions we're interested in obviously are jurisdiction and, and the merits. So it's, it's, it's your call how you want to divide it up, but. I'm sure Mr. Berlin will, will take the time necessary and if there is any left over, then I can argue. All right. Why don't we give him 10 minutes then on, on opening and five on rebuttal. And then if you, if you want to say something, you can, but I wouldn't mind being in your position. Thank you. Your Honor, if I may, let me pull on, let me pull the UTU's or just for one second. If the railroad were required by its contract with the engineers to have an engineer on a locomotive that is being operated through remote control devices manned by a UTU conductor on the ground, then the railroad would have doubtful, there'd be doubtful economics to the railroads doing that operation and the UTU by national agreement emulated by several of the other carriers as, as the work. It has consequences that could affect it. Sure. But the issues before us, you're, you're going to argue. Yes, Your Honor, I'd be happy to. On, on jurisdiction, to resolve that jurisdictional question, do we need to determine whether the district court was remanding to the deadlock neutral or instead was the parties were asking the entire SBA to re-arbitrate or what? Does it make any difference? Well, Your Honor, we know what the district court did. She, she remanded the case and she didn't say to whom. And when a court wants to remand to an agency or an arbitrator to make specific findings or to find on a specific issue, then we've seen in the other cases that are discussed in the briefs how that's done. The court says so. The court didn't say that and what the court did therefore has no other consequence but to kick the case I think the words, I'm sorry. Are you contemplating something other than re-arbitration? Well, if it were re-arbitration, that would have to be by agreement of the parties setting up another board to do the job that the parties would commission the board to do. Judge Greenaway, there's no provision in the existing arbitration agreement or in any arrangement that the parties had made or have made for resuming the concluded arbitration. So you think that the language to the parties was purposeful and that the parties are now empowered to resolve it as they may, either go, go back to arbitrate, re-resume a, a new, newly formulated group for arbitration or? Well, Judge Greenaway, the district court did not remand to the parties or to the board. What she said is this case is remanded for proceedings consistent with this opinion. And doesn't the opinion repeatedly just, it singles out the, the deadlock neutral. I mean, don't they, she singles them out and says he didn't do this, he didn't do that. I mean, isn't that what the opinion says? Well, of course, Judge Chigar is the, the decision of the deadlock neutral is the decision of the board. Right. And that's what she was reviewing. So you said, you said consistent with the opinion and the opinion pretty much focuses on the one guy. Well, and what he didn't do because he spoke for the board. I mean, that was where the judge found error. We think of course the district court was wrong and committed its own error in reversing or vacating on those grounds. But the fact is that in the, in the few cases that we found and are discussed in the briefs where this court and other courts have found vacate plus remand to a board to be a non-final and non-appealable act, it's because the remand was for the purpose of developing a record or deciding specific questions that the district court had found needed to be decided. Such as whether a record, a bare record of, of discipline infractions or of injuries and discipline infractions constituted a sufficient basis for the arbitration award that had sustained the employee's, I guess, dismissal in that case. And we don't have that here. What we have is an, is a, an interpretive opinion by the deadlock neutral on behalf of SBA 1157 that said this is what Rule 10 means, Article 10 means. And Article 10 doesn't apply to this situation. Now the district court found that that was wrong. We dispute that of course. But that's not an instruction as to procedure and it's not a remand to the same deadlock neutral or even to the same board by its terms. Usually, usually, I mean, the law that's developed is if there is a remand, and my surmise here is that this was what is done a hundred times almost out of a hundred times. Remand for proceedings consistent with this opinion. And then the question in this case becomes what does that mean? The law appears to be that if there is a remand for clarification or there is a remand for added evidence, then that's interlocutory. If there is, if it doesn't, isn't one of those two things, it's final. But I, I'm not sure what the remand is for and maybe a dumb question. Should we inquire formally of the district judge what she meant when she said she's remanding for proceedings consistent with this opinion? No, Your Honor, I don't think you should. I think you take the opinion of the district court as what it is and you review it because it's final and appealable. The fact of it is that the remand language is, if anything, it's gratuitous. It speaks simply for the fact that the dispute is kicked back to the parties. Our interpretation of it is the parties are supposed to resolve their dispute through whatever means are appropriate for them. What if the order said it goes back to the deadlock neutral specifically? He should answer the question. What if, what if the, the order was very specific? We'd still say that was a final order because all that amounts to is saying the deadlock neutral got it wrong. And if the arbitration board, if the district court had thought that, that her authority extended to having this arbitration board decide to take up the case again, then it could do so. I don't know. I mean, you say you got it wrong. You know, I think the, the, doesn't the opinion say that he didn't get it at all? He didn't answer the question, whether he answered it, you know, rightly or wrongly. The district court's opinion is a, is the kind of intrusion into the arbitration process. I see that leads into the merits. Yeah. And into the finality of arbitration awards that the more we talk about what, what did the district court think ought to be done and what if the district court had remanded to the, specifically to the deadlock neutral. And remember, the deadlock neutral sat there during the initial arbitration hearing and wrote an opinion but didn't communicate it to any of the parties until there was a deadlock. And then his opinion is unsealed. I only ask that because you seem to be assigning some significance to the fact that we're not sure who it's going back to. I don't think it, I, Judge Chigaris, what I said is that I think that if, if the district court had said this is remanded to the deadlock neutral to get it right or to, to take it up again, I would be contending that that is nothing more than a vacate and that it's a final and appealable order of the district court. It, it, it resolves the dispute that the parties brought before it. When BLET appealed the arbitration award to the district court, what the union sought was vacation of the award. The union didn't ask for a remand for further proceedings or to decide another question or to take up additional facts or anything else. The union said it's wrong, vacate it. And the district court found it's wrong, it's vacated. Well, if the district court wants to help the parties by saying, okay, it's back to you, well, we can understand that. Although, in fact, that's not commonly how it's done. And, I mean, I, we've all seen many different cases. But in arbitration cases, customarily, if the district court, in the rare case where it overturned an award, it says it's vacated. It'll say why, but it says it's vacated. The parties may have an unresolved. When you say it overturned, it says reversed, but it doesn't? Well, under the Railway Labor Act, the power of the district court is to vacate. And to, there's a remand power in the, in the Railway Labor Act. And what the district court did is consistent with its power under the Railway Labor Act. But it didn't send it back to the board expressly, and I think it has to. To ask the district court what, what the court had in mind is, is simply to, to create a, a sort of a, a ping-pong advisory system that, that, that prevents us from getting a ruling on whether this arbitration award should be treated as, as a final within the meaning of what the Railway Labor Act wants for final and binding awards. Now, this, this opinion didn't direct the, the deadlock neutral to do anything in particular, right? It decided one way or the other way. That's right. It just said, whatever you did, we don't get it, and you didn't seem to do what you're supposed to do, right? Well, Judge Shigarashi didn't address it to the, to the deadlock neutral. She said the award is deficient because the deadlock neutral didn't do what he was supposed to do. Right. Which, of course, we think he did precisely what he was asked to do. But, I mean, that's, that's the way a district court may, may describe, you know, the error it finds in whatever's presented to it from below. But that's, that's not, if there had been a process in place, and, and if, in fact, this was an evidentiary matter or a matter in which the award was unclear, as, as Judge Ambrose mentioned, then one could understand the district court saying, I don't think there was enough here to make a decision on the discipline matter or whatever that was an issue. But that's not what, that's not what the court did. The court very specifically said the dis-, that the, the deadlock neutral had no authority from the parties to decide what the words in Article 10 meant. Well, that's just blatantly wrong with all respect. The parties submitted to the district court the question of whether Article 10 applied. And to do that, the arbitrator, the deadlock, the deadlock neutral, looked at the words of the, of Article 10 and said what they meant. Now, he said it on a ground that no party had expressly argued. And the district court clearly disagreed. In my gut reactions, nobody's going to argue that today either. I mean, it was, it was, it was far out. Well. That, that's a, your argument is, who, who cares if it's far out? The question is, did he answer the question of whether there was a violation of Article 10 of the agreement? And he answered that question. Exactly. Forget what his reasoning is. And Judge Ambrose, this court, like all the other courts of appeals, has said many, many times that it just doesn't matter whether the court disagrees with the arbitrator's reasoning. If it's grossly wrong, the court will not interfere with that. I think what happened here for, for Judge Conte only, it was that it was so strange his reasoning that she, as she says on page 12 of her, or I'm sorry, page 11 of her opinion, it just doesn't, it didn't, he didn't answer the question. He, the question presented in effect required him to resolve whether an engine crew is necessary on every remote controlled engine. And instead what he answered is whether one engineer could be considered a crew. And he looks at the definitional term of crew and it means more than one, so therefore can't be. And she's saying it just, it's, it's so wifty. It's so far out that it doesn't, it just doesn't answer the question. But the flip to your argument is, no, he did answer the question. Was there a violation of Section 10? The answer, no. He expressly held, Judge Ambrose, expressly found that BLET's question presented must be answered in the negative. Correct. There, there are reasons, I suppose, why the parties didn't argue the, the case that, about the issue that was put to him. The, my own view for looking at the record, and you'll see it in the submissions of the parties to the arbitration board, is that the parties were seeing this, certainly the railroad was, as the third in a series of cases decided by special boards of adjustment having to do with the arrangements that are being made because of technological change to provide for operation by remote control of locomotives without anybody in the cab. And that's what the submission's all about. When you look at the arbitration submission of the railroad, it's all about whether this case is like the case on a, an affiliated railroad called the Elgin, Joliet, and Eastern in special board was 1151. That's what they were talking about. And everybody just sort of didn't focus on, didn't think about the word crew, and took it as, that took the issue presented at, or being discussed as whether that article prevented the use of, or, or required the use of an engineer in the cab. No one thought about whether the rules, the rules language itself could even apply. Correct. And I think when the, when Judge Conde got as far as she did into these weeds, that's the arbitrator's job. And with all respect, I think, I think she, she saw a deficiency in the reasoning and set about to straighten it out. No, she's a, she's very, very bright. And I think this one just offended her. It was, it was just, it was so creative to be kind. Anyway, why don't we hear back from Ms. Bate. We'll get you back for five minutes of rebuttal. Thank you. One moment. Don't worry, I do that all the time. That makes me feel better. It doesn't make my clerks feel any better. And I don't have clerks to help, so. I know, I know. It's just like, I can dress the guy, I can put him out there, but he still can't be organized. Okay. Good morning, Your Honors. My name is Margo Pave, and I am here representing APLE, BLET. And I'd like to begin, actually, where Your Honors began, with the question of jurisdiction. Because it is, in fact, our position that this Court does not have jurisdiction over this appeal for the very simple reason that the district court order. Part of what we're trying to do is sort of put ourselves in the mind of Judge Conte. And looking at it, was she sending this back for additional evidence? As I understand it, I believe she was sending it back for the deadlock neutral to do what the parties had assigned him to do, which was answer the question. He did answer the question. He said in the negative there was no violation of order. Well, except, as Judge Conte pointed out, there was, in fact, no dispute in the record before him that a crew could, and indeed at many times was, a single person. So she didn't send it back for additional evidence. She sent it back to answer the question. But, so, can you argue that she sent it back for a clarification? I think it's certainly possible that that's what she was doing, yes. I think by saying that the deadlock neutral, and I just want to point out, I don't know if you still have a question about this, but I can address why I do believe that she was, in fact, sending it to the deadlock neutral, not to the parties. But to address your question, I do think that it can be understood as a clarification in the sense that from his award it does not appear that he answered the issue that was actually presented to him. So I do think it can be viewed as being returned for clarification. We'll get to that, but the, did she, possibly she sent it back for a clarification. Why then did she say that the record should be closed? Wouldn't it have been a whole lot easier and you would have had a lay down hand if she had said, I retain jurisdiction. You mean when she said case closed in her order? Yes, the answer to your question is it would be easier. Judge Greenaway is a district judge, normally when you close, was a district judge, when you close a case, that means it's administratively closed for purposes of this particular court. It would have to formally be reopened in the future, and that's not what she did here. And I understand that, and with all due respect to Judge Conte, as well as to Judge Greenaway, as this court has noted, how a district court views its decision does not determine whether, in fact, the decision is final for purposes of the final judgment rule. And so I, you know, I also think that a statement like that, sort of in passing, isn't enough to over- I don't know if that's passing, I mean that's pretty definitive. The question here is, let's say this goes back, and the deadlock neutral reverses himself. And so therefore, now you're going to appeal. And can they bring up, at that time, that back the first time around, it was incorrect, the way the court acted? I'm sorry, they have won, presuming on remand, the board goes through the deadlock neutral. I'm sorry, it goes back, and the deadlock neutral issues a new decision in your favor. Okay, that's where I was confused. URR could file a new civil action to vacate that new award, but how could it obtain judicial review of the district court's order vacating the initial arbitration? Well, very easily, in fact, in BMWE v. Conrail, which is addressed at length, actually, in our motion to dismiss for lack of jurisdiction, that, in fact, the court specifically addressed that, that after the board does its job on remand, if, in that case, it was Conrail, here it would be URR, is agreed by that decision, it will have the opportunity to challenge the remand order, because it's an interlocutory order, and under the basic rule, the interlocutory orders come up. But as a practical matter, I mean, aren't we several steps ahead of that at that point in time? Well, we may be, but one of the basic tenets of the final judgment rule, and as this Court has recognized in Bachowski and others, is it's a very narrow rule, and if the decision isn't final, it isn't final. And so while, yes, this is the case with many interlocutory orders, you know, I think the entity appealing, in this case URR, says, oh, wouldn't it be easier if we could just get it dealt with now, what the final judgment rule says is we don't do it piecemeal. We wait. And once the board, in this case the deadlock neutral, has done the job that he was actually supposed to do in the first place, which is what Judge Conte has remanded the case to him to do, if URR were to lose at that point, the issue of Judge Conte's interlocutory order here would be available to them to bring up on appeal of that order of the board through the district court to the court of appeals. With the exception of things like qualified immunity, where you can have interlocutory appeals, usually we do think of a remand as somehow making things interlocutory. But here the argument is, and it's a pretty good argument, that Judge Conte not only sent it back, but she sent it back with pretty seemingly clear instructions as to deadlock neutral, here's how you're supposed to come out. And that sounds final. And then, as I said, the kicker is she closes the case. It's like, I don't think I need to see this again. Or if you want to appeal it afterwards or do something, it'll be another judge, because I've done my job. Well, actually, I don't believe that, and I think, in fact, Your Honor said this in a question to Mr. Berlin. In fact, I don't think she did say to the deadlock neutral, this is the decision I want you to reach. What she did was say, you need to answer the question, you need to address the issue actually presented to you. She did not tell the deadlock neutral how to address that issue. And that is why, for example, I think the reliance of Mr. Berlin on, in his brief, on the USW Local 913 VURR case is in opposite here. Because there, in fact, the district court did say, I find that the individual below or the individual grievant did not waive his right to counsel. Well, that was the question that the board was supposed to be deciding. So in that situation, as this Court noted, there, and by the way, the Court emphasized that those were highly unusual circumstances, and that was the only reason that this Court treated a remand as something other. Here, that isn't what happened. By the way, you mentioned, you think that she meant to send this back to the deadlock neutral, which I happen to agree, if I had to take a guess. But what authorization does she, or what authority does she have to remand a case for further proceedings solely to the deadlock neutral? Well, I think she has that authority under the Railway Labor Act, which provides two years for an appeal or a petition to review an award, and authorizes the court to either. Okay, where in the act do you have that? It's section, give me one moment, it's 150, I apologize, section 153, 45153, and I apologize. And what does it say? Well, it provides two years in which to seek review, and the court may, and this I do have, if you will give me one moment. No problem. Okay. It's 45 U.S.C. section 153, first Q. And a court can affirm the order or set it aside in whole or in part, or may remand the proceedings, and obviously for such further action as it may direct. Remand the proceedings? Well, to the board, and at this point the deadlock neutral is the board. That is the way, and remember, the board in the cases of SBAs, unlike the NRAB. None of the other four members are allowed to reconsider their decision in light of what she said? Well, certainly as we understand her order, it was to the deadlock neutral. And the way, and again, the reason I say that is because SBA boards are created by agreement. And here the agreement was the chairman, not the deadlock neutral, the chairman and the partisan members would hear the case, they did. The chairman issued an order, issued an award, finding in favor, and not, you know, finding in favor of BLET, it was a split. So under the terms of the agreement, it goes to the deadlock neutral. And then the deadlock neutral's award is the board's award. So in our view, since that is the board's award, when the Judge Conte remanded to the board, she was remanding to the deadlock neutral. I also think, and I should point out that that view is not BLET's alone. UTU, in fact, says the same thing in its brief, that its understanding is that she was remanding to the deadlock neutral, and they make no suggestion that that's improper or impossible or otherwise. I think, as I believe, I don't remember if it was you, Judge Amber or Judge Chigares. If it was a good question, it was mine. Okay, well then, you know, that she, that in fact throughout her opinion, she singles out the actions of the deadlock neutral. And she does that because he is the board for purposes of the agreement. All right, let's just go on to the merits for a moment. It almost seems to me that you're asking us to affirm the, if we have jurisdiction, to affirm the district court on an alternative ground. You don't appear to be defending the district court's conclusion that the deadlock neutral exceeded his jurisdiction by answering a question not posed by the parties. Well. I mean, what you appear to be arguing is that the deadlock neutral relied on interpretation of Section Article 10 that was wholly baseless and completely without reason. Well, and I think, in my view, that is a version of what the Court said. So, and, but obviously, you are certainly entitled to affirm the district court on any grounds that certainly presents itself in the record. But I think that Judge Conte herself pointed out that when the, when an arbitrator disregards the record, he is in fact exceeding his authority and is in fact acting in a way that has no rational ground. So I don't know that we're that far away from Judge Conte. The problem you have on the merits, I mean, as the Supreme Court has said, this is about as narrow a jurisdiction as it gets. And there is a Supreme Court decision back in, well, 1987, United Paper Workers International Union v. Miskow, where the Court said that a federal court may not review the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. And it seems that what Judge Conte was saying here is that the deadlock neutral misinterpreted the contract big time. But is that a thicket she can even enter? Well, I think it is a thicket she can enter for a limited purpose. She is not entitled to enter it for the purpose of saying he did it right, he did it wrong. She is entitled to enter it for the purpose of saying, did he do what he was supposed to do? And in fact, this Court, well, first of all, the ---- But again, back to the question. The question was, was there a violation of Article 10 of the CBA? Is that correct? Yes. But again, the, in fact, the Supreme Court has noted, and I believe it was TCEU v. Union Pacific, or I believe that's the case, that a decision as regards a board has to be, and in fact, Judge Conte noted this, that a decision by an arbitrator that is not based on the agreement, including the practices on the shop floor, exceed the jurisdiction of the arbitrator. But it appears to be, your opponent's argument is, and it appears to be, fortunately or unfortunately, the law out there that if you answer the question and you do it for a reason that has nothing, basically that, you know, I got up this morning and I just didn't feel right. That was my reason. You can't even go there. And with all due respect, I would actually disagree with that. I think if it is directly contrary to all record evidence, you can go there, because then that becomes ---- It may be. And that is, I think ---- That possibly could be. That's the next case. But this case, he answered the question. Well, again, I don't believe he ---- And he did it for reasons that she found to be not making much sense. Well, except if you look at what he did, the way he, the way he, excuse me, his actual award states a, I looked at a dictionary. May I finish my response? I looked at a dictionary, and it says a crew cannot be won, even in the railroad. Consequently, BLET loses. Now, the question of whether a crew could be won was not before him. It was undisputed in the record that a crew in this context could be won. You're making that a question. That was really part of the reasoning as to how he arrived at a result that answered the question, even though you may disagree with it, and certainly a lot of people would disagree with his reasoning. And I guess our position is that, in fact, the standard of the Supreme Court and of this Court in Mattson and in Tonoma all, and frankly in all of your cases, supports Judge Conte in saying, and in Mattson in particular, when you look at the fact that the Court looked at the record to determine whether, in fact, the arbitrator's decision was based on the record or not. So it is our position, obviously, as a matter of jurisdiction, it's our position that this is not a final order that should be here, but were this Court to take jurisdiction of this appeal, it is our position that, in fact, Judge Conte did not go beyond the proper scope of review in this case. It's not your position that there was any relief that you sought that did not come about as a result of Judge Conte's order, is it? Well, actually, in the sense that by vacating and remanding, we're now pet we got right, so we don't have relief either. No, I would actually say we don't, because that's still waiting. We can't get that. But she couldn't substitute herself with a deadlock neutral case. Exactly. We can't get that until the deadlock neutral does his job. So what didn't she do for you what you asked her to do? Well, and one thing I noticed when, and I think this is, this follows up on your comment about sort of the commonality of Judge Conte's decision. Generally under the RLA, one party seeks enforcement, another seeks vacature. That's basically how it happens. And then under the provision I cited you got it vacated. But we didn't. We got it vacated and remanded. So, and that's fairly common. It's very rare for a party to seek. You have to agree. There's no way she could substitute her. She could not put herself in the place of the deadlock neutral, could she? No, of course not. Okay. So then the best you could get would be vacating and remanding back to either the deadlock neutral or the board, but. Well, you know, there have been cases where a court has simply vacated. I mean, and indeed, I think Mr. Berlin cites a number of them in his briefs. The point is she had to remand, didn't she? I mean, in my view, I believe that he was, his decision was so outside the bounds that she probably could have simply vacated. But she didn't, I think, properly in her sense trying to be as careful as possible. But if she vacated, what would happen then? Well, there would be nothing left to do. Here there's something, here the deadlock neutral, and by the way. No, but the point is how do you get a decision from the board? Would she have to go back and start all over again? If she vacated? Yeah. In effect there's a remand anyway, right? Well, no, I think if she vacated we would have to start all over again. I think on remand, I mean, I think, I guess from my perspective in terms of Judge Greenway's question, she remanded it to the deadlock neutral. Now what she told the deadlock neutral is answer the question. We don't know what the deadlock neutral's answer will be. He may still, we don't know what he will do. And so to say did we, you know, we don't know what will happen. We will know after he has done his job and one party or the other might then petition for review. So your view's at odds with Mr. Boleyn's view because Mr. Boleyn seems to say that it's going to go back and the parties will figure it out. Your view is. It will go back to the deadlock neutral. Absolutely. And as I said in their brief, that is also UTU's position. All right.  Thank you very much, Your Honor. Thank you. Mr. Boleyn. The remand order, the order of the district court which says that the case is remanded doesn't tell us what to do and there's no single definition of the word remand in this context that tells us who gets it. The agreement, the SBA 1157 exists only because there's an agreement of the parties that created it and the deadlock neutral has only one thing to do and he's done it. He doesn't live there anymore. There's nothing more before his board. But what you have, I mean, maybe a clue and maybe I think this is what your adversary is saying is that you have an order that is vague but it also refers to the opinion which focuses directly on the deadlock neutral. Isn't it reasonable to think it's got to, if you read the opinion, the Judge Conte says the deadlock neutral didn't do his job. We got to vacate and remand it. I mean, isn't it reasonable to think that it's going back to the deadlock neutral? Well, the district court doesn't have the authority to turn the deadlock neutral into a board. The deadlock neutral did his job which was to write an opinion and put it in an envelope and that's been taken care of. If the district court had said the matter is remanded to board 11, SBA 1157, we might be, our argument might be framed a little differently but that's not what the district court did. Suppose the deadlock neutral said in the envelope, Mickey Mantle is the best player of all time, right? We'd all agree that he was. That can't be right. That's why it's a hypothetical. I'm sorry. It's Willie Mace but you understand my point. We would all agree that he didn't do his job, right? So if it was sent back to him to answer the questions, there'd be no dispute, right? We'd all agree, yeah, he didn't do his job. He's got to go back and do that. You would agree with that, right? I think probably. But if he didn't answer any, didn't purport to answer any question, yes. Other than to say, I find Mickey Mantle to be the greatest. Okay. But this deadlock neutral's opinion answers the question, expressly answers the question. It's his reasoning that the district court had problems with. But he said in so many words, the question posed by the BLET must be answered in the negative. He says the deadlock neutral did not answer the question at issue. That's wrong. I mean, that's where the district court erred. If you look in the joint appendix at page 54. Can we review that? I'm sorry? And you want us to do what with that error? Well, you review the case de novo and determine whether the award of the, excuse me, whether the, you determine whether the district court adhered to the standards of review of an arbitration award. And the district court did not because in finding that the deadlock neutral did not answer the question presented, the district court, with respect, got it wrong. The neutral, in so many words, answered the question presented. It's explicit. It's the reasoning, as we've all been saying. It's the reasoning. But we only get there if we have jurisdiction, right? We only get to that issue if we have appellate jurisdiction. Yes. Yes, that's true. Let me go back to the question then of jurisdiction. I'll take that invitation. You talked with counsel about what would happen if the case goes back and the deadlock neutral finds for BLET, assuming there's a procedure for that, assuming the deadlock neutral hears it and becomes an arbitrator fully vested with authority, which no one's ever given him, and he decides it. And then we appeal. Could we challenge the remand in the first place? And counsel said yes. We don't think it's so clear. Consider another possibility. Do you think Judge Slovener was equivocal in her opinion in Conrail, I guess it was? That was a case in which there was to be a taking of additional evidence. And it's a different decision when it comes out at the end of that. But suppose we win. Well, that's the tough one. I mean, what she said was had the railroad in Pittsburgh Chartier's case not prevailed in the remanded hearing before the board, it would have had available to it on appeal from a final order on the merits the argument that the district court erred in remanding to the board. I think that might have been a little beyond what other case law supports. I don't know that it's so clear. I don't know that including such a statement in an opinion is going to make it clear later that we can. But consider what if we win in this supposed remanded proceeding? What if we win? And the union appeals to a new district court judge. Our defense of the award is, or our defense of the outcome is, oh, yes, this is a fine second award. We win that one, too. But it should never have gone there. So we'd have to be arguing to a new district court that Judge Conte's decision is an error. Well, the district court might not listen to that for very long. So we make the argument pro forma, put it on the shelf, and then have to raise it again in some supposed appeal to this court. I don't know quite how we argue that case in district court with any, and expect a thorough hearing, expected an actual hearing on the previous hearing. But a lot of district court judges could give you a thorough hearing. No, no. I tried to correct where that was going. A hearing on whether a co-district judge had committed reversible error. Judge Greenaway definitely would have considered it. But would your colleagues, Judge Greenaway. Look, I see my time is up. I just, it's the interference with the arbitration process, and to honor this as a remand to the deadlock neutral, it would emphasize that this is an interference in the process because the deadlock neutral's powers are restricted by the party's agreement. And nobody has given him any broader powers than that. And the district court didn't purport to and couldn't have, in our view. So we think that the, to characterize this remand as somehow keeping the case alive for further review later on, much less specifying a procedure, is to deny what's really going on, which is the same as the underlying reason for reversing the district court here, which is that this is too much interference with the function of an arbitrator. We all understand how Judge Connally might have got there, apparently did get there. But the guidance from the courts, from the Supreme Court and of this court itself, is very clear that the decision needs to stand no matter what holes someone might poke in its reasoning because the questions presented were explicitly answered. Thank you very much. Thank you very much. Thank you to counsel for very well presented arguments. We'll take the matter under advisement.